UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| NutriChef USA, Inc. and Arnold Johnson, | |
| Plaintiffs, | Case No: _____ |
| v. | |
| Simplicity Gourmet International, Inc.; Equitable Acceptance Corporation; and New Era, Inc., | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiffs Arnold Johnson and NutriChef USA, Inc. ("NutriChef") for their

Complaint against Defendants Simplicity Gourmet International, Inc. ("Simplicity"),

Equitable Acceptance Corporation ("EAC") and New Era, Inc. ("New Era") allege as

follows:

## **INTRODUCTION**

1.      NutriChef markets and sells cookware, cutlery and bakeware in the bridal

industry.  Plaintiffs entered into agreements with the Defendants pursuant to which they

acquired the assets of another company, Simplicity, that sold cookware, bakeware, and

cutlery manufactured by New Era in the bridal industry.  Under the agreements,

NutriChef purchased consumer leads and equipment from Simplicity, and was granted

the right to be the only seller of New Era products in the bridal industry.  Relatedly,

NutriChef entered into a customer financing agreement with EAC, under which EAC

finances NutriChef's customers' purchases of New Era products.  Simplicity, New Era, and EAC all have common owners.

2.      Unfortunately, Defendants never delivered on their promises.  Most significantly, they never transferred to NutriChef the assets it purchased for $600,000.  NutriChef is entitled to rescission of the asset purchase agreement and related agreements, and damages due to Defendants' breaches.

## PARTIES

3.      Plaintiff Arnold Johnson is a citizen of the state of Florida.

4.      Plaintiff NutriChef is a Florida corporation with its principal place of business at 4020 South 57th Avenue, Suite 204, Lake Worth, Florida 33463 and is therefore a citizen of the state of Florida.

5.      Upon information and belief, Defendant Simplicity is an administratively dissolved Tennessee corporation.  Simplicity's principal place of business was at 750 Jim Parker Drive, Suite 200, Smyrna, Tennessee 37167.  Upon information and belief, Simplicity was purchased by New Era or New Era's owners prior to NutriChef buying Simplicity's assets.  The former owner of Simplicity is an owner of New Era in Tennessee.

6.      Defendant EAC is a Minnesota corporation.  On information and belief, its principal place of business at 1200 Ford Road, Minnetonka, Minnesota 55305.

7.      Defendant New Era is a Tennessee corporation.  On information and belief, its principal place of business at 157 Airport Road, Clarksville, Tennessee 37042.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as complete diversity of citizenship exists between the parties and the damages sought by the Plaintiffs exceeds $75,000.

9.      This Court has personal jurisdiction over Defendants Simplicity and New Era pursuant to Minn. Stat. § 543.19 because they regularly transact business in Minnesota, all agreements were negotiated with Defendants' agent Jeff Henn, who is located in Minnesota, and the various agreements incorporate Minnesota law and/or require suit to be filed in Minnesota.

10.      This Court has personal jurisdiction over Defendant EAC, because EAC is a Minnesota corporation.

11.      Venue is appropriate in this forum pursuant to 28 U.S.C. § 1391 because the Defendants are subject to the Court's personal jurisdiction, and the forum-selection clauses in several of the contracts in dispute.

## FACTUAL BACKGROUND

12.      Arnold Johnson is the founder of NutriChef, a company that sells upscale cookware and cutlery products in the bridal market directly to consumers.

13.      New Era manufactures and sells cookware, bakeware and cutlery. New Era's employees and executives include, among others: Donald Henn; Bobby Griggs; John Martelli; and Jeff Henn.  Before NutriChef bought its assets, Simplicity sold New Era products.

14.     Equitable Acceptance Corporation provides consumer financing for direct sales. EAC's Chief Executive Officer is Donald Henn, and its registered agent is Jeff Henn.

**Asset Purchase and Sale Agreement and Related Contracts**

15.     In 2014, Johnson was approached by New Era about the possibility of potentially buying the assets of Simplicity. New Era represented that it had acquired Simplicity, which owed New Era money at the time. Plaintiffs negotiated all of the agreements with Jeff Henn of New Era and EAC, as well as Bobby Griggs, former owner of Simplicity and, on information and belief, one of New Era's owners.

16.     On December 1, 2014, Plaintiffs entered into the Asset Purchase and Sale Agreement with Simplicity pursuant to which NutriChef bought consumer leads, equipment and Simplicity's goodwill. The Asset Purchase and Sale Agreement is attached as Exhibit 1.

17.     Under the Asset Purchase and Sale Agreement, NutriChef was to pay a total of $600,000 for acquired assets. Those assets were assigned the following values: $338,147 for the consumer lead information, $125,000 for the equipment, and $136,853 for Simplicity's goodwill. NutriChef paid $150,000 at closing and also executed a promissory note, attached as Exhibit C to the Asset Purchase and Sale Agreement, by which it agreed to pay EAC (not Simplicity) the remaining $450,000. Johnson executed a personal guaranty to EAC for amounts owed.

18.     Under the Asset Purchase and Sale Agreement and Promissory Note, NutriChef was to pay EAC a monthly payment of at least $6,000. The payment was to be

funded by New Era paying EAC 75% of a rebate that NutriChef received on all products

it purchased from New Era, with NutriChef making up any shortfall between 75% of its

monthly rebate and $6,000. Plaintiffs directed New Era to pay EAC on a monthly basis

75% of the rebate earned for the previous month. In every month, NutriChef made the

required payment of $6,000, either from New Era rebates or other sources.

19.     Simplicity represented and warranted that it would, on the closing date,

transfer all of the assets to NutriChef, including the consumer leads. Pursuant to Section

6.2 of the Asset Purchase and Sale Agreement, Simplicity's compliance with this

obligation was a condition precedent to NutriChef's and Johnson's performance of their

obligations under that and the related agreements.

20.     As part of the Assert Purchase and Sale Agreement, NutriChef was also

required to enter into a management agreement with New Era. (Exhibit 1, § 7.3.) Under

the Management Agreement, New Era agreed to sell cookware, bakeware, and cutlery

only to NutriChef for the consumer bridal market. NutriChef was required to pay New

Era 3% of NutriChef's total gross sales.

21.     In connection with the planned asset sale to NutriChef, on or around

September 3, 2014, Johnson and NutriChef entered into a Full Recourse Master Dealer

Agreement ("Master Dealer Agreement") with EAC, an affiliate of New Era. The Master

Dealer Agreement is attached as Exhibit 2. Pursuant to that agreement, EAC was to

provide direct consumer financing for NutriChef's customers.

22.     Under the Master Dealer Agreement, EAC agreed to purchase retail installment contracts ("Customer Obligations") from NutriChef. Customer Obligations are contracts with consumers for the purchase of goods from NutriChef.

23.     Under the Master Dealer Agreement, EAC was required to pay NutriChef an agreed upon amount for each Customer Obligation, and from each agreed upon amount, EAC could retain in a Reserve Fund a portion of any Customer Obligation. The Reserve Fund could be used to pay any default, unpaid balances, losses, costs or expenses on any Customer Obligation.

24.     If a customer defaulted, and EAC was fully reimbursed from NutriChef's Reserve Fund, EAC was to reassign the Customer Obligation to NutriChef and return the contract upon written demand, so that NutriChef could attempt to collect from the customer.

25.     In sum, pursuant to the above agreements, NutriChef purchased cookware and cutlery from New Era to send to its customers. NutriChef received a rebate ranging from 24%-30% (along with other wholesale override payments) from New Era on the price of the cookware and cutlery it purchased from New Era, which rebate was used to satisfy the Promissory Note payments. Most consumers would sign financing agreements, which NutriChef assigned to EAC. EAC then sent NutriChef the full contract amount minus the amount it withheld in NutriChef's Reserve Fund to pay for defaults, and other service fees charged by EAC.

**Defendants' Material Breach of the Asset Purchase and Sale Agreement and Related Contracts**

26.     Plaintiffs have continuously requested the consumer leads that they purchased from Simplicity and New Era under the Asset Purchase and Sale Agreement. Those leads should have been transferred to NutriChef prior to closing.

27.     Simplicity and New Era have never delivered the consumer leads.  The consumer leads were over 50% of the agreed value of the assets that NutriChef purchased from Simplicity and New Era.  Simplicity and New Era have failed to perform under the Asset Purchase and Sale Agreement, and have breached their representations and warranties to NutriChef.

28.     Defendants have further breached the Asset Purchase and Sale Agreement by routinely withholding more than 75% of NutriChef's rebate from New Era, even where 75% would exceed the required minimum payment of $6,000 per month owed under the Promissory Note.  In addition, Defendants breached the Asset Purchase and Sale Agreement by, without any prior notice to or consent by NutriChef, arbitrarily withholding layaway payments and applying them to further reduce the Promissory Note beyond $6,000 a month.

29.     New Era has breached the Management Agreement by allowing at least one additional company other than NutriChef to sell New Era cookware, cutlery and bakeware in the bridal industry after December 1, 2014.  On information and belief, that company has sold hundreds of thousands of dollars of New Era products in the bridal industry after December 1, 2014.

30.     EAC has breached the Master Dealer Agreement by abusing its discretion in setting the amount it withholds for the Reserve Fund.  Among other things, EAC has been "reserving" for potential defaults by customers who are making only layaway payments.  But there is nothing to reserve for with respect to these customers.  That is because NutriChef is sent only payments actually made by layaway customers (and not any advance on future payments), and the customers are not shipped any product.  If those customers stop making payments, neither EAC nor NutriChef loses any money.  By reserving for defaults by layaway customers, EAC has inflated the customer default rate, thus inflating the amount it withholds in the Reserve Fund, to the detriment of NutriChef.  In addition, EAC is failing to advance to NutriChef the full amount of layaway payments actually made, even where there is no financial risk to EAC.

31.     EAC has breached the Master Dealer Agreement because that agreement does not permit EAC to retain layaway payments or to reserve against layaway "defaults."

32.     EAC has also breached the Master Dealer Agreement by charging NutriChef "interest" on "defaulted" layaway accounts.  Because product is not shipped on layaway accounts, customers are not charged interest on those accounts.  NutriChef pays EAC a $25 service fee to set up each layaway account.  EAC, however, has also been charging NutriChef "interest" on unpaid layaway balances, and collecting that "interest" from NutriChef's Reserve Fund when layaway customers stop paying.

33.     As part of the Master Dealer Agreement and the services it provides NutriChef, EAC is required to send customers their bills on a timely basis.  But EAC has

not been billing customers on a timely basis.  Because customers do not receive bills, they do not make payments, and EAC then improperly counts those customers as late or in default in order to charge off the account with the Reserve Fund.  This improper practice artificially decreases the Reserve Fund, inflates the withholding amount for the Reserve Fund (by artificially increasing the default rate), and harms NutriChef's business reputation, as customers hold NutriChef accountable for EAC's failure to send them bills.

34.     Despite repeated requests, EAC has refused to provide any accounting of the Reserve Fund, including how much money in that fund comes from Customer Obligations with respect to delivered product as opposed to layaway payments.

35.     EAC has further breached the Master Dealer Agreement by refusing to return defaulted Customer Obligations to NutriChef for collection, so that NutriChef can mitigate its damages.  As described above, when customers default, EAC seizes the full amount that remains on the Customer Obligation, plus interest and penalties, from the Reserve Fund, to NutriChef's detriment.  The Master Dealer Agreement, however, requires EAC to then return those contracts to NutriChef for further collection efforts.

36.     Despite numerous customer defaults on Customer Obligations owned by EAC and NutriChef's demands that those contracts be returned, EAC has not timely returned Customer Obligations.  In fact, EAC did not return a single defaulted Customer Obligation to NutriChef between September 2014 and April 2016.  The more time that passes after initial default, and less likely NutriChef is to recover anything.  NutriChef has been substantially damaged by EAC's refusal to return defaulted Customer

Obligations, because it has been unable to collected on those Customer Obligations, but has already paid EAC 100% of their value.

## COUNT ONE: BREACH OF CONTRACT

### (Against Simplicity and New Era)

37. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully stated herein.

38. NutriChef entered into a written agreement—the Asset Purchase and Sale Agreement—with New Era and Simplicity for the purchase of Simplicity's assets, including consumer leads.

39. Simplicity and New Era have breached the Representations and Warranties in the Asset Purchase and Sale Agreement by not transferring its consumer leads to NutriChef on or before the closing date of December 1, 2014, or at any time thereafter.

40. Simplicity and New Era have substantially breached the contract by not transferring consumer leads to NutriChef.

41. Simplicity and New Era have also breached the Asset Purchase and Sale Agreement, in conjunction with EAC, by directing New Era to pay EAC more than 75% of the rebate NutriChef earns on New Era products in certain months, even where 75% of the rebate would equal or exceed the required $6,000 payment under the Promissory Note.

42. Simplicity and New Era have breached the Asset Purchase and Sale Agreement by, without any prior notice to or consent by NutriChef, arbitrarily

withholding layaway payments and applying them to further reduce the Promissory Note beyond $6,000 a month.

43.     NutriChef has substantially performed its obligations under the Asset Purchase and Sale Agreement.

44.     Simplicity's and New Era's breaches directly caused injury to NutriChef.

## COUNT TWO:  BREACH OF CONTRACT (Good Faith and Fair Dealing)

### (Against Equitable Acceptance Corporation)

45.     Plaintiffs reallege and incorporate the foregoing paragraphs as if fully stated herein.

46.     Plaintiffs entered into a written contract, the Master Dealer Agreement, with EAC to provide customer financing and billing services.

47.     As a matter of law, EAC owed Plaintiffs an implied covenant of good faith and fair dealing under the Master Dealer Agreement.

48.     Plaintiffs have fully performed under the Master Dealer Agreement.

49.     EAC has acted unreasonably, arbitrarily, and capriciously in breach of its duty of good faith and fair dealing by artificially inflating its Reserve Fund withholding by improperly failing to bill customers (causing defaults), by improperly including layaway payments in the reserve, and by improperly including "defaults" on layaway payments for which it bears no risk in its calculations of default rates.  EAC also has refused to provide an accurate, clear accounting of the Reserve Fund and the amount of layaway money it includes.

50.     Plaintiffs have been damaged by EAC's breach of contract, as they have not received money they are entitled to under the Master Dealer Agreement.

## COUNT THREE:  BREACH OF CONTRACT

### (Against Equitable Acceptance Corporation)

51.     Plaintiffs reallege and incorporate the foregoing paragraphs as if fully stated herein.

52.     Plaintiffs entered into a written contract, the Master Dealer Agreement, with EAC to provide customer financing and billing services.

53.     Plaintiffs have fully performed under the Master Dealer Agreement.

54.     Under the Master Dealer Agreement, upon written demand EAC is required to reassign and send the Customer Obligation back to NutriChef if EAC is reimbursed on any Customer Obligation from NutriChef's Reserve Fund.

55.     EAC has been reimbursed on multiple defaulted Customer Obligations from NutriChef's Reserve Fund.

56.     NutriChef has made written demands for all defaulted Customer Obligations.

57.     EAC has breached the Master Dealer Agreement by failing to provide Plaintiffs with the defaulted Customer Obligations in a timely fashion.

58.     NutriChef has been damaged by EAC's breach of the Master Dealer Agreement, because NutriChef has been unable to collect money from the defaulted Customer Obligations and has had to reimburse EAC from its Reserve Fund for those Customer Obligations.

59.     EAC has also breached the Master Dealer Agreement by withholding customer layaway payments, including some portion of them in the Reserve Fund, and including layaway "defaults" when calculating a default rate for purposes of setting the Reserve Fund Amount.

60.     EAC has breached the Master Dealer Agreement by charging NutriChef "interest" on "defaulted" layaway accounts, and collecting that "interest" from NutriChef's Reserve Fund when layaway customers stop paying.

## COUNT FOUR:  DECLARATORY JUDGMENT

### (Against all Defendants)

61.     Plaintiffs reallege and incorporate the foregoing paragraphs as if fully stated herein.

62.     As described in the preceding paragraphs of the Complaint, an actual and justiciable controversy exists between Plaintiffs and all Defendants with respect to their rights and obligations under the Asset Purchase and Sale Agreement and the incorporated ancillary agreements.

63.     The Asset Purchase and Sale Agreement required the transfer of consumer leads to Plaintiffs prior to closing. If Simplicity failed to do so, Plaintiffs had no obligation to perform under the agreement.  The agreement also required Plaintiffs to enter into the following ancillary contracts, all of which are contingent on Defendants' performance under the Asset Purchase and Sale Agreement:  (1) Promissory Note; (2) Personal Guaranty; and (3) Management Agreement. (Ex. 1, ¶ 7.3.)

64.     Plaintiffs have not received possession of the consumer leads.

65.      Therefore, Plaintiffs seek entry of judgment pursuant to 18 U.S.C.
§ 2201(a) declaring that:

(1)      Simplicity and New Era failed to perform their obligations under the Asset
Purchase and Sale Agreement that were to have been performed by the Closing Date;

(2)      Plaintiffs may rescind or terminate the Asset Purchase and Sale Agreement and all
Agreements incorporated as exhibits to the Agreement, including the: (a) Promissory
Note; (b) Personal Guaranty; and (c) Management Agreement,

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

1.      An Order declaring that Plaintiffs may validly rescind or terminate the
Asset Purchase and Sale Agreement and all Agreements incorporated as exhibits.

2.      Damages in an amount to be determined by the trier of fact, and to the full
extent permitted by law, including return of all amounts paid by NutriChef under the
Asset Purchase and Sale Agreement.

3.      An accounting of the Reserve Fund and all monies paid to EAC from the
Reserve Fund.

4.      As accounting of all claims made to the Reserve Fund since inception,
which details claims relating to layaway accounts and interest charged on those accounts.

3.      All costs, disbursements, legal expenses, and attorneys' fees incurred in this

litigation pursuant to Section 8.1(c) of the Asset Purchase and Sale Agreement and other

applicable law.

6.      All further relief that the Court finds just and equitable.

Dated: June 7, 2016                                  FAEGRE BAKER DANIELS LLP


                                                     By: /s/ *Matthew B. Kilby*
                                                     Matthew B. Kilby (MN #0335083)
                                                     Staci L. Perdue (MN # 0395216)
                                                     2200 Wells Fargo Center
                                                     90 South Seventh Street
                                                     Minneapolis, Minnesota  55402
                                                     (612) 766-7000
                                                     (612) 766-1600 (Fax)
                                                     Matthew.Kilby@FaegreBD.com
                                                     Staci.Perdue@FaegreBD.com